THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CÁNDIDO RIVAS, Defendant and Appellant.

No. 8252. Argued July 22, 1940.—Decided July 26, 1940.

*Ramón G. Goyco* for appellant.   *R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The District Attorney of Ponce filed an information against Cándido Rivas for a violation of section 2 of Act No. 63 of 1931 (Session Laws, p. 414), to prohibit the sale, storage, or transportation of adulterated, misbranded, poisonous, or deleterious foods and drugs and for other purposes, charging the defendant with having "on March 3, 1939, in Ponce, .... unlawfully, wilfully, and maliciously, kept for sale, for human consumption, adulterated flour, . . ."

The defendant pleaded not guilty and, after a trial, was convicted and sentenced to pay a fine of $25. Feeling aggrieved by that judgment, he took an appeal, and he has assigned as an only error the one claimed to have been committed by the court in weighing the evidence.

The evidence introduced by the prosecution consisted of various exhibits and the testimony of José Rosa Rosario, Food and Drugs Inspector of the Health Department, and José Buxó Villafañe, Chemist of said department.

The first of these witnesses stated, in short, that he went to the warehouse of C. Rivas & Co. and inspected and took samples from fifty 100-pound bags of flour which were there; that he sent the samples to the laboratory, that the flour turned out to be adulterated, it containing thirty-eight worms alive or dead per kilogram. The denaturation of the flour was ordered, as it could not be used for human consumption. He notified the order to the defendant. The latter failed to denature the flour and stated that he had sold it to farmers who were going to mix it with Paris green in order to use it on tobacco plantings. He sought to explain his conduct by saying that he had not understood well the order received. The testimony of the chemist and the exhibits corroborated the testimony of the inspector.

The witnesses for the defense were the defendant himself, a merchant, who stated that he sold the fifty bags of flour to the farmers for the latter to use it as insecticide on tobacco

plantings, and Agustín Fuertes and Julio Torres, farmers, who testified that they had purchased the flour from the defendant which they used after mixing it with Paris green on their tobacco plantations.

We think that with that evidence as a basis, the court could conclude, as it did, that the violation charged against the defendant had been committed by him and that the fine of $25 which it imposed on him was justified.

The adulterated flour was exposed for sale—which as a general rule is for human consumption—when it was condemned; the defendant was ordered to denature the same, and without complying with the order, that is, without denaturing the flour, he sold it.

The information was filed for keeping for sale the article in question. It was not necessary to show any sale. Nevertheless such sale was proved, and this permits us to judge fully the conduct of the defendant. His explanation is not acceptable. Under the order which he received and which constituted the best guarantee of the public interests, he could not at all sell the flour for human consumption, and in order to be able to sell it for other purposes he must first denature it, which he failed to do.

The violation of the law is manifest. There was no error. The judgment appealed from must be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.